UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOHN D. BURNETTE JR., | |
| Plaintiff, | |
| v. | Case No. 3:24-CV-5 JD |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## OPINION AND ORDER

Plaintiff John Burnette appeals the denial of his claims for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act. For the reasons below, the Court will remand this case to the Agency for additional consideration.

### A. Background

Mr. Burnette applied to the Social Security Administration for disability benefits, alleging that he became disabled in February 2019. Mr. Burnette's claims were rejected, leading to a review by an Administrative Law Judge ("ALJ").

In the proceedings before the ALJ, Mr. Burnette maintained that he has been treated for multiple conditions including chronic pain, arthritis, nerve pain, headaches, fatigue, shortness of breath, gastrointestinal pain, and psychological issues like anxiety, depression, and PTSD. He has seen various healthcare providers including primary care physicians, pain management specialists, physical therapists, psychiatrists, and social workers. His examinations revealed significant limitations such as decreased range of motion in his neck, back, and limbs, as well as radicular pain, numbness, and tenderness. Mr. Burnette has been prescribed medications

including antidepressants, pain relievers, and nerve pain medications, and he has received epidural steroid injections for lumbar stenosis.

At the hearing before the ALJ, Mr. Burnette testified that a 2014 car accident caused a crushed vertebra in his neck, leading to chronic pain that has worsened over time. He said he pushed himself to return to work but eventually lost his job because of the severity of his pain, which starts in his neck and extends to his left shoulder, fingers, and down his ribcage, abdomen, and groin. He described the pain as intense, sometimes feeling like being struck by lightning or stabbed with needles. His pain worsens when standing for longer than half an hour, and despite injections, medications, and physical therapy, the pain persists. Additionally, he said he suffers from nightmares linked to a traumatic military experience, leading to vivid sensory memories and irritability. Therapy has provided some relief for his emotional struggles.

The ALJ issued a decision finding that Mr. Burnette was not disabled. (R. at 36.) In doing so, the ALJ employed the customary five-step analysis. At Step 2, the ALJ determined that Mr. Burnette suffered from the following severe impairments: "cervical degenerative disc disease with radiculopathy, cervical stenosis, thoracic degenerative disc disease with stenosis, lumbar degenerative disc disease with stenosis, chronic pain syndrome, obesity, allergies, PTSD, anxiety, and major depressive disorder." (R. at 20.)

As relevant here, at Step 3, the ALJ found that "[w]ith regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation." (R. at 22.) Elsewhere in the decision, the ALJ noted that Plaintiff's treating pain management physician informed Plaintiff that he should focus on his mental impairments if he applied for disability. (R. at 8 (citing R. at 985).

At Step 4, the ALJ determined Mr. Burnette's residual functional capacity ("RFC"),[1] finding that he can

> perform light work[2] . . . except requires a sit or stand option, allowing the claimant the opportunity to change positions to standing for 30 minutes after sitting for 30 minutes, without being off task more than 10% of the workday when changing positions. The claimant can never climb ladders, ropes, or scaffolds; never crawl; occasionally climb ramps and stairs; occasionally balance as defined in the SCO of the DOT; and occasionally stoop, kneel, and crouch. He can occasionally reach overhead, bilaterally; should avoid concentrated exposure to hazards, such as unprotected heights and moving mechanical parts; avoid concentrated exposure to weather, as defined in the SCO of the DOT, avoid concentrated exposure to extreme heat and extreme cold; and avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants as defined in the Selected Characteristics of Occupations of the DOT. He can concentrate, persist, and maintain pace to perform simple tasks and frequent interaction with coworkers, supervisors, and the public.

(R. at 23.)

In light of this RFC, the ALJ determined that Mr. Burnette is unable to perform any past relevant work. (R. at 34.) At the final step, the ALJ found that, considering Mr. Burnette's age, education, work experience, and the RFC, there are jobs in significant numbers in the national economy that he can perform (a checker, routing clerk, sorter). (R. at 27.) The ALJ arrived at this conclusion after questioning a Vocational Expert ("VE") at the hearing.

After the Appeals Council denied Mr. Burnette's request for review of the ALJ's decision, she appealed to this Court.

---

[1] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

B.  **Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.

4

2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### C. Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity,

which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

### D. Discussion

#### (1) *Concentration, Persistence, and Pace*

The ALJ determined that Mr. Burnette suffers severe mental impairments from PTSD, anxiety, and depression. (R. at 20.) In the RFC, she found, among other things, that he is able to concentrate, persist, and maintain pace to perform simple tasks. Mr. Burnette argues that this finding was erroneous because it did not fully capture his mental functioning ability.

The Court agrees with Mr. Burnette. At Step 3 of the sequential analysis, the ALJ found that Mr. Burnette has *moderate* limitations in concentrating, persisting, and maintaining pace.[3]

---

[3] Concentration, persistence, and pace refer

to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that [the claimant] understand[s] and know[s] how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

6

(R. at 22 (emphasis added).) However, in her RFC finding the ALJ dropped the qualifier "moderate," stating instead that "[h]e can concentrate, persist, and maintain pace to perform simple tasks . . . ." (R. at 23.) Likewise, in describing the mental functioning limitations of the hypothetical person to the VE, the ALJ used the same language: he "is able to concentrate, persist, and maintain pace to perform simple tasks . . . ." On the basis of this and other limitations, the VE testified that there are a significant number of jobs in the national economy that the hypothetical person could perform: a checker, routing clerk, and sorter. (R. at 69–70.) The ALJ then relied on that testimony to find that Mr. Burnette was not disabled. (R. at 35–36.)

The ALJ's RFC and the hypothetical, which is derived from the RFC, are incomplete because they omit that Mr. Burnette has moderate[4] limitations in concentration, persistence, and pace. "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). "This includes any deficiencies the claimant may have in concentration, persistence, or pace." *Id.*; *see Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019) ("Again and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations.") (collecting cases). Adequate concentration, persistence, and pace are required for competitive employment. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(3)(f)(i) ("To do a work-related task, you must be able to understand and remember and apply information required by the task. Similarly, you must be able to concentrate and persist

---

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(3).

[4] The areas of mental functioning are based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation. A person has a moderate limitation if his mental "functioning . . . independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c). A moderate limitation is greater than a mild limitation, which means that mental function is "slightly" limited, but less than marked limitation, which means that the mental function is "seriously limited." *Id.*

7

and maintain pace in order to complete the task, and adapt and manage yourself in the workplace. Limitation in any one of these parts (understand or remember or apply; concentrate or persist or maintain pace; adapt or manage oneself) may prevent you from completing a work-related task."). "Though particular words need not be incanted, we cannot look at the *absence* of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and the hypothetical question." *Winsted*, 923 F.3d at 477 (emphasis in the original). "[W]e will not assume that the VE is apprised of such limitations unless she has independently reviewed the medical record." *Yurt*, 758 F.3d at 857.

There is no evidence here that the VE reviewed Mr. Burnette's medical history so that he could limit relevant work despite the gap in the hypothetical. Therefore, the ALJ should have stated an adequate hypothetical to the VE and, correspondingly, an adequate RFC that justifies the ALJ's ultimate conclusion that there are jobs in significant numbers in the national economy that Mr. Burnette can perform. Instead, the hypothetical refers just to Mr. Burnette's ability "to concentrate, persist, and maintain pace to perform simple tasks" without qualifying that he's moderately limited in these functions. (R. at 69.) As such the hypothetical is misleading. At best the hypothetical is no different than saying that Mr. Burnette "can perform simple tasks." But the Seventh Circuit has "repeatedly rejected the notion that a hypothetical . . . 'confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'" *Varga*, 794 F.3d at 814 (quoting *Yurt*, 758 F.3d at 858–59); *see Winsted*, 923 F.3d at 477 ("We have also made clear that in most cases 'employing terms like "simple, repetitive tasks" on their own will not necessarily exclude from the VE's consideration those positions that present significant

8

problems of concentration, persistence and pace,' and thus, alone, are insufficient to present the claimant's limitations in this area.") (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010)). This is so because "someone with problems concentrating might not be able to complete a task consistently over the course of a workday, no matter how simple it may be." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Without a complete hypothetical, there is no assurance that the VE fully understood Mr. Burnette's limitations so as to provide correct information about the jobs he can do that are available in significant numbers in the national economy. *See id*. at 1234 ("The ALJ's findings about the jobs [the plaintiff] could perform needed to account in a meaningful way for the earlier findings that recognized her difficulties with concentration, completing tasks, and managing stress."); *Crump*, 932 F.3d at 570 ("[T]he ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform." (quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)). While the ALJ found generally in her RFC discussion that Mr. Burnette "has received some treatment and has made complaints of anxiety, depression, and PTSD that reasonably support areas of moderate limitations" (R. at 33), these limitations are not ascribed to his ability to concentrate, persist, or maintain pace and weren't presented to the VE. And as already explained, Mr. Burnette's impairments related to anxiety, depression, or PTSD weren't addressed with the VE, so as to possibly substitute for the requirement of stating his limits in concentration, persistence, and pace. On remand, the ALJ should refer expressly to moderate limitations in concentration, persistence, and pace in the hypothetical to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do.

In defending the ALJ, the Commissioner misses the mark: he argues that no medical source found greater functional restrictions than those identified by the ALJ. While that might be true, the real problem is that the VE was asked to opine about the jobs in the national economy available to the hypothetical person without being fully informed of these limitations. The Commissioner also fails to explain how the hypo adequately conveys Mr. Burnette's *moderate* limitations in concentration, persistence, and pace. Consequently, the ALJ's reliance on the VE that there are jobs in the national economy that Mr. Burnette can perform is tainted with error, and the Court has no confidence that the ALJ's conclusion is based on substantial evidence. This is particularly so because the VE noted in his testimony - in response to the ALJ's question about how much off-task behavior employers generally tolerate - that being off-task more than 15% of the time would be job prohibitive. (R. at 71.) So, it would be critical for the VE to understand Mr. Burnette's limitations regarding concentration, persistence, and pace as they would directly impact his ability to do other work in the national economy. *See Diaz v. Berryhill*, No. 2:17-CV-314, 2018 WL 4627218, at *8 (N.D. Ind. Sept. 27, 2018) (when the ALJ considers off-task time but fails to explain whether the claimant was limited by any off-task allowances, the ALJ fails to provide a "logical bridge" between the evidence and the RFC conclusion, requiring remand).

In his argument, the Commissioner[5] also overlooks that the burden at step five—the step in question—is on the Commissioner. *See Young*, 362 F.3d at 1000. It's of no avail for the Commissioner to argue that Mr. Burnette has identified no evidence supporting a more restrictive RFC; here, the Commissioner should have focused on what the ALJ, not Mr. Burnette, was required to do. In short, the Commissioner's response does not address the requirement that the

---

[5] The Agency is currently led by Acting Commissioner Leland Dudek. However, using the term "Acting Commissioner" instead of simply "Commissioner" makes the text cumbersome, and the Court will spare the reader from such redundancy.

areas of mental functioning—concentration, persistence, and pace—must be accounted for in the RFC.

The Seventh Circuit makes few exceptions for the requirement that all the claimant's limitations be included in the RFC so that the VE can base his consideration about the available jobs on the basis of what the claimant can and can't do. Such cases do exist but their reach is very narrow. For example, the Seventh Circuit has allowed the RFC to stand "when a claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress work." *O'Connor-Spinner*, 627 F.3d at 619 (citing *Johansen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002); *Arnold v. Barnhart*, 473 F.3d 816, 820, 823 (7th Cir. 2007); and *Sims v. Barnhart*, 309 F.3d 424, 427, 431–32 (7th Cir. 2002)). Similarly, the court allowed an RFC where, "although the limitations on concentration, persistence and pace were not mentioned in the hypothetical, the underlying conditions were." *Id*. at 620 (citing *Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009)). But none of these scenarios apply here given that nothing in the RFC can be read as a substitute for moderate concentration, persistence, and pace. *See Lanigan v. Berryhill*, 865 F.3d 558, 565–566 (7th Cir. 2017) ("[T]he Commissioner argues that the ALJ's hypothetical effectively communicated, in different words, the idea that Lanigan had experienced 'moderate difficulties in concentration, persistence, or pace.' We cannot agree. The hypothetical begins by positing a person capable of performing 'simple, routine, and repetitive tasks.' These terms refer to 'unskilled work,' which the regulations define as work that can be learned by demonstration in less than 30 days. We have explained that the speed at which work can be learned is unrelated to whether a person with mental impairments—i.e., difficulties maintaining concentration, persistence, or pace—can perform such work.").

**(2)** *Mr. Burnette's other Arguments*

Mr. Burnette also claims that there are other errors in the ALJ's RFC determination. For example, he claims that the ALJ: interpreted raw medical evidence without corresponding medical opinions; did not support her conclusion that he could work with a sit/stand option and frequently interact with coworkers and supervisors; and ignored his reports about the severity of his pain when assessing his subjective symptoms. The Court elects to forgo addressing these arguments because the ALJ's failure to properly articulate Mr. Burnette's limitations in concentration, persistence, and pace in the RFC requires a remand of this case to the Agency. *Cf. DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate [the plaintiff's] limitations in concentration, persistence, and pace, we do not address [the plaintiff's] other arguments."). The Court's decision in this regard says nothing about the strength of Mr. Burnette's other arguments, and he is free to re-assert them on remand.

**E. Conclusion**

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: March 5, 2025

                                              /s/ JON E. DEGUILIO
                                              Judge
                                              United States District Court